UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| DARREN HOLLIS, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 19 CV 50135 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| CEVA LOGISTICS U.S., INC., | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

    For years now, even before the advent of TikTok, video recordings have been ubiquitous. Many of these recordings evidence the bizarre fascination of recording every aspect of human existence. Some video recordings, such as cat videos, serve useful societal purposes. Jessica Gall Myrick, *Emotion regulation, procrastination, and watching cat videos online: Who watches Internet cats, why, and to what effect?*, 52 Computers in Human Behavior 168 (November 2015) (watching cat videos relieves stress and improves mood). But one of the most important and useful purposes of video recordings is to investigate various allegations of wrongdoing. For decades now, law enforcement has used video recordings from all manner of sources to investigate allegations, including but not limited to, dash camera video recordings, body camera recordings, CCTV recordings, cell phone recordings made by witnesses, and doorbell video recordings—just to name a few. Indeed, for decades, basic police investigative work involves obtaining and reviewing video recordings. *See, e.g., Clipper v. Takoma Park*, 876 F.2d 17, 19-20 (4th Cir. 1989). And pulling video is not limited to law enforcement. Indeed, it is a basic investigative tool used by human resources departments nationwide. *See, e.g., Davis v. Huntington Ingalls, Inc.*, No. 20 CV 18, 2021 U.S. Dist. LEXIS 241119, *10 (S.D. Miss. Dec. 17, 2021); *Sinegal v. Martin Marietta Materials, Inc.*, No. 3:18 CV 360, 2020 U.S. Dist. LEXIS 78534, *13 (S.D. Tex. Apr. 9, 2020); *In re Tribune Media Co.*, No. 08-13141, 2016 Bankr. LEXIS 875, *25 (D. Del. Mar. 18, 2016); *United States EEOC v. Suntrust Bank*, No. 8:12 CV 1325, 2014 U.S. Dist. LEXIS 47703, *10-11 (M.D. Fla. Apr. 7, 2014). The common, pedestrian step of determining if a video recording of an event exists, and if so, observing and preserving it to be used in an investigation, makes CEVA Logistics' unexplained and cavalier failure to take these steps—in the face of explicit and repeated requests from a terminated employee, no less—all the more troubling and deserving of a curative measure.

    For the following reasons, the Court will impose a curative measure for CEVA's failure to take reasonable steps to fulfill its duty to preserve relevant ESI that cannot be restored or replaced, resulting in prejudice to Darren Hollis. The Court will leave to the jury the decisions of whether CEVA possessed the requisite intent, and if so, whether the spoliated ESI was unfavorable to CEVA. So, the Court grants, in part, and denies, in part, Hollis' Motion for Missing Evidence Instruction. Dkt. 65.

### A. Background Facts

Based on the parties' filings, the following facts are undisputed.

CEVA hired Mr. Hollis on November 12, 2017, to work as a material handler/operator, a non-managerial position. He worked in the receiving area of the warehouse. On November 28, 2018, an incident involving Mr. Hollis and coworker Phillip Bayer occurred, though exactly what happened is hotly disputed. According to CEVA, witnesses reported that Mr. Hollis got into an argument with Mr. Bayer, yelled at him, and initiated some form of physically threatening behavior or touching. These alleged actions resulted in Mr. Hollis' termination on December 4, 2018. CEVA identifies three written statements from the day of the incident from witnesses, including Mr. Bayer, who all reported that Mr. Hollis was yelling and pushing or grabbing Mr. Bayer. Those three witnesses are white. CEVA also collected written statements from Mr. Hollis and one other witness describing Mr. Hollis putting his hands up to stop Mr. Bayer, but not touching Mr. Bayer. A third witness later stated in a declaration that he told Mr. Hollis' supervisor, Anthony Berkshire, that he never saw Mr. Hollis touch Mr. Bayer. Those three witnesses are African American. As a result, CEVA faced a classic swearing contest as to whom to believe. Ultimately, Mr. Berkshire credited the three white witnesses who claimed that Mr. Hollis grabbed Mr. Bayer on November 28, 2018, rather than the African American witnesses who asserted that Mr. Hollis never touched Mr. Bayer. Based on this credibility determination, CEVA fired Mr. Hollis.

Three security cameras were aimed at the area of the incident. CEVA presented no evidence that any of its employees ever attempted to view, preserve, or recover the footage before Mr. Hollis' termination. On December 5, 2018, the day after his termination, Mr. Hollis wrote to CEVA's human resources department about the termination in a document he labeled a "formal letter of complaint against CEVA Logistics for workplace race discrimination." Dkt. 65 at 97. Twice in the letter he refers to his request that someone review footage of the incident: "I suggested Tom pull and watch the video as the entire warehouse is being monitor[ed]," and "Finally, if I had put my hands around any person's neck, management could confirm what took place by viewing the cameras." *Id.* at 98. So, the evidence establishes that the very next day after the incident, Mr. Hollis verbally requested the general manager to review the video recordings, and about a week later in a document complaining about race discrimination, twice requested a review of the video recordings that he asserted would clear him of wrongdoing.

Mr. Hollis timely filed a charge of discrimination with the EEOC on March 13, 2019, and, after receiving a right-to-sue letter, filed this suit on June 6, 2019. The plaintiff served discovery requests on February 18, 2020, seeking the video recordings and the identity of the custodian of the video. CEVA responded on April 3, 2020, that no video existed and that the custodian of the video recordings was Unisight, a third-party vendor. But in a deposition, a representative of Unisight testified that it was never the custodian of footage from the CEVA plant, that Unisight merely sold the recording equipment, and that CEVA owned and operated the system and recordings. Recordings on CEVA's security camera equipment are normally retained between 30 and 90 days.

Critically, in August 2018—before Mr. Hollis' termination—CEVA supervisor Anthony Berkshire investigated an unrelated claim of misconduct brought by a different employee. During that investigation, Mr. Berkshire pulled security camera video recordings of the alleged incident to review. During his deposition, Mr. Berkshire described the simple process he used to obtain the video: He requested it by contacting security.

**B. Applicable Law**

Rule 37(e) provides the sole source to address the loss of relevant ESI that was required to be preserved but was not because reasonable steps were not taken, resulting in prejudice to the opposing party. *See DR Distributors v. 21 Century Smoking*, 513 F. Supp. 3d 839, 956 (N.D. Ill. 2021). Rule 37(e) has five threshold requirements:[1] (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *DR Distributors*, 513 F. Supp. 3d at 958. If any of these requirements are not met, then curative measures and sanctions are unavailable under Rule 37(e).

If all these threshold requirements are met, the court must then determine if the party seeking the ESI has suffered prejudice or if the party with possession, custody, or control of the ESI intended to deprive the seeking party of the ESI. *See* Fed. R. Civ. P. 37(e)(1), (2). If prejudice but not intent exists, then the court may impose curative measures, including but not limited to, an instruction that jurors may consider the circumstances surrounding the loss of the ESI. *See DR Distributors*, 513 F. Supp. 3d at 958. If intent exists, the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default. *See* Fed. R. Civ. P. 37(e)(2).

The Court reviews each of the relevant inquires in turn.

**C. Analysis**

**1. Was the Information ESI?**

Mr. Hollis alleges that the video recording of the incident between him and Mr. Bayer existed but was not preserved. Video is a form of ESI, *see Freidig v. Target Corp.*, 329 F.R.D. 199 (W.D. Wisc. 2018); *see also Stanbro v. Westchester Cty. Health Care Corp.*, No. 19 CV 10857, 2021 U.S. Dist. LEXIS 163849, *27 (S.D.N.Y. Aug. 27, 2021). So, the first threshold element would seem easily satisfied. But CEVA contends that this case does not involve ESI because there is no evidence that video of the incident ever existed, and that a party has no obligation to produce information that does not exist, citing *Love v. City of Chicago*, No. 09 CV

---

[1] An analytical decision tree is depicted in Hon. Iain D. Johnston & Thomas Y. Allman, *What Are the Consequences for Failing to Preserve ESI: My Friend Wants to Know,* Circuit Rider 57-58 (2019). This decision tree has been printed in full in other court opinions. *See, e.g., Hamilton v. Oswego Cmty. Unit Sch. Dist. 308,* No. 20 CV 292, 2022 U.S. Dist. LEXIS 33398, *6 (N.D. Ill. Feb. 2, 2022).

3631, 2017 U.S. Dist. LEXIS 184081, at *12 (N.D. Ill. Nov. 7, 2017). It speculates, without any evidence, that "many things could cause a video camera not to work (e.g. power loss, cable disconnections, malfunctions, or recorder software errors)." Response [83] at 4. Albeit odd and begging the ultimate question, CEVA's syllogism is simple: No video; no ESI. According to CEVA, the "Plaintiff must first *prove* that a video camera recorded Plaintiff's encounter with Bayer." *Id.* at 6. Under CEVA's theory, as a practical matter, the spoliation itself prevents a claim of spoliation.

The Court begins with the burden of proof. CEVA contends that the burden falls on Mr. Hollis to prove that the video existed, and to do so by a preponderance of the evidence, citing in support *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2021 U.S. Dist. LEXIS 72444 at *23 (N.D. Ill. Jan. 20, 2021). Although *Sonrai* states that the burden falls on the party seeking relief to establish each of the prerequisites under Rule 37(e), the cases on which *Sonrai* relies never actually place the burden on the party seeking relief. In *Worldpay, US, Inc. v. Haydon* and this Court's own decision in *Snider v. Danfoss, LLC,* the courts merely set out the five prerequisites under Rule 37(e) and then examined the record to determine whether the prerequisites were met. *See Worldpay, US, Inc. v. Haydon*, No. 17 CV 4179, 2018 U.S. Dist. LEXIS 193562, at *9-14 (N. D. Ill. Nov. 14, 2018); *Snider v. Danfoss, LLC*, No. 15 CV 4748, 2017 U.S. Dist. LEXIS 107591, *8-10, 13-19 (N.D. Ill. July 12, 2017), *report and recommendation adopted by* 2017 U.S. Dist. LEXIS 120190 (N.D. Ill. Aug. 1, 2017). The third case cited, *Raimrez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016), did not address missing ESI at all.

Other district courts outside the Seventh Circuit seem to support CEVA's contention that the party seeking relief bears the burden of establishing that video footage existed. *See, e.g., Reed v. Royal Caribbean Cruises, Ltd.*, No. 19 CV 24668, 2021 U.S. Dist. LEXIS 26209, at *8-15 (S. D. Fla. Feb. 11, 2021); *Mavoides v. Ryan*, No. 17 CV 4187, 2021 U.S. Dist. LEXIS 23083, at *8 (D. Ariz. Feb. 5, 2021). But this Court is not convinced that the burden to establish that ESI ever existed falls on the movant. Burdens of proof generally fall on the party with better access to the information. *See Schaffer v. Weast*, 546 U.S. 49, 60 (2005). Here, CEVA knew by at least December 5, 2018, just a week after the incident, that Mr. Hollis was repeatedly requesting someone obtain and review the video recordings. CEVA does not deny receiving the letter, admits that it does not know whether anyone investigated whether the recording existed, and nothing else in the record reveals any other effort by CEVA near the time of the incident or Mr. Hollis' December 5, 2018, letter to determine whether the video recording existed. Mr. Hollis made reasonable efforts to alert CEVA to the importance of any security footage that existed within days of the incident at a time that any video recording would still have existed. Once alerted, determining whether video of the incident was recorded fell within the sole control of CEVA.

But even if the burden were to fall on Mr. Hollis, the Court finds he has satisfied it. CEVA does not dispute Mr. Hollis' assertion that just weeks earlier the security camera system was working, and that a supervisor knew how to access the recordings and obtained and reviewed video recordings as part of his investigation of an unrelated incident. CEVA does not contest Mr. Hollis' assertion that multiple security cameras were pointed in the direction of the incident. Instead, CEVA speculates about events that could have prevented its cameras from recording the event, such as a power outage. But no evidence in the record—zero—even

remotely hints that any of these events occurred or that anything else interfered with the camera systems' normal and intended function. The most reasonable inference is that given CEVA's investment in security equipment to capture video of unexpected events, it would make efforts to keep the equipment operational. After all, why install video recording equipment if the video will not be viewed when it can answer a swearing contest, which would ensure an accurate employee disciplinary decision. In the absence of any other evidence, the inference that video recordings of the incident between Mr. Hollis and Mr. Bayer existed is bolstered, if not proven, by CEVA's previous use of video recordings in a similar incident in the same warehouse. Based on this record, the Court finds video of the November 28, 2018, incident between Mr. Hollis and Mr. Bayer was recorded, and therefore was ESI.

### 2. Was There a Duty to Preserve the ESI?

The duty to preserve under Rule 37(e) is based on the common law, and so is triggered when litigation is commenced or reasonably anticipated. *The Sedona Principles*, 19 Sedona Conf. J. at 51. This means that the duty to preserve can arise before litigation is filed. *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011). The scope of the duty to preserve includes ESI that is expected to be relevant and proportional to the claims or defenses in the litigation. *The Sedona Principles*, 19 Sedona Conf. J. at 51. In a traditional tort setting, the moving party bears the burden of proof to establish that a duty existed. *See Shurr v. A.R. Siegler*, 70 F. Supp. 2d 900, 934-35 (E.D. Wisc. 1999) *modified in irrelevant part by* 1999 U.S. Dist. LEXIS 25497 (E.D. Wisc. Dec. 16, 1999). And in a traditional tort setting, duty is a question of law determined by the factual circumstances presented. *See Masters v. Heeston Corp.*, No. 99 C 50279, 2001 U.S. Dist. LEXIS 6732, at *27-28 (N.D. Ill. May 23, 2001) (citing *Quinton v. Kuffer*, 582 N.E.2d 296, 300 (Ill. App. Ct. 1991)).

CEVA contends that no duty to preserve the video footage arose until March 27, 2019, the date on which it claims that it first learned of Mr. Hollis' charge of discrimination filed with the EEOC. By then, it contends, the ninety day retention period would have passed and the video would no longer be available, if it ever was. In support, it relies on *Jones v. Bremen High Sch. Dist. 228*, No. 08 CV 3548, 2010 WL 2106640 (N.D. Ill. May 25, 2010), in which a court concluded that the defendant's duty to preserve electronic documents was triggered by the plaintiff's filing of a charge of discrimination with the EEOC. But, in *Jones*, the plaintiff had not been fired, and so her charge of discrimination filed with the EEOC was the employer's first notice of her allegations of discrimination. In painfully obvious contrast, Mr. Hollis' December 5, 2018, letter that he referred to as a "formal letter of complaint against CEVA Logistics for workplace race discrimination," alerted CEVA both to the nature of his allegations and the relevance of any video recording of the incident. His letter is akin to the incident report a customer filed after a slip-and-fall in *Freidig*, 329 F.R.D. at 207, which triggered a duty to preserve video of the incident.

CEVA attempts to distinguish *Freidig* because the incident between Mr. Hollis and Mr. Bayer was not a slip-and-fall. So what? Both types of incidents—a slip and fall and a racially motivated termination—potentially subject a defendant to liability. And, according to the statements CEVA relied on to fire Mr. Hollis, the incident was at least as noteworthy as a slip-and-fall, and may well have constituted a battery. Whether a duty to preserve has arisen is an

objective inquiry, viewed from the perspective of the defendant at the time. *Id.* CEVA's knowledge of the incident on its premises, its termination of Mr. Hollis for his role in the incident, and Mr. Hollis' letter alerting the defendant to his allegation of discrimination and that video of the incident would be relevant to determining what occurred, triggered a duty to preserve any video of the incident that existed. Under these facts, litigation was reasonably anticipated. *See Storey v. Effingham Cty.*, No. 4:15 CV 149, 2017 U.S. Dist. LEXIS 93147, *11 (S.D. Ga. June 16, 20170 ("The Court cannot fathom a reasonable defendant who would look at these facts and not catch the strong whiff of impending litigation on the breeze.").

### 3. Was the ESI Relevant?

The next factor is whether the ESI "should have been preserved," which amounts to whether the ESI is relevant.[2] *See Snider*, 2017 U.S. Dist. LEXIS 107591, at *9 n.9. Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance. *See Mason Tenders Dist. Council of Greater N.Y. v. Phas Constr. Servs.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016). This burden is not a high standard for at least two reasons. First, relevance is determined under the standard in Federal Rule of Civil Procedure 26(b)(1), not the standard of Federal Rule of Evidence 401, which itself is not a high standard. *See Snider*, 2017 U.S. Dist. LEXIS 107591, at *9 n.9. Second, the principle that the party with access to the proofs generally bears the burden on an issue should temper, at least to some extent, the quantum necessary to meet the burden. *See Schaffer*, 546 U.S. at 60 (the party with access to the proofs bears the burden of proof). In the context of spoliation, the party seeking sanctions does not have access to all the necessary proof, in large part, because the other side spoliated it.

CEVA has not addressed this analytical step explicitly. But throughout its brief CEVA claims that if the video existed, it would not necessarily have helped Mr. Hollis because written witness statements, plus similar deposition testimony obtained later from witnesses, confirm that Mr. Hollis grabbed or pushed Mr. Bayer. According to CEVA, "[b]ased on this evidence, it seems highly likely the video may have ended Hollis's case." Response [83] at 10. But this argument establishes the evidence's relevance. Indeed, even under Fed. R. Evid. 401, the relevance of evidence does not turn on whether it supports its proponent's position, but rather it is relevant if "it has any tendency to make a fact *more or less* probable than it would be without the evidence." (emphasis added). And, of course, CEVA's argument entirely ignores that Mr. Hollis has presented witness testimony supporting his position, and contrary to the witnesses upon which CEVA relied. Additionally, as most counsel and courts know, sometimes eyewitnesses change their testimony when confronted with video recordings.

To the extent that CEVA is arguing that Mr. Hollis had a burden to establish that the video recordings would have been favorable, some courts have rejected that contention. *See, e.g., Ungar v. City of New York*, 329 F.R.D. 8, 16 (E.D.N.Y. 2018); *see also Stanbro*, Nos. 19 CV 10857 & 20 CV 1591, 2021 U.S. Dist. LEXIS 163849 at *27 (noting conflict). Even if this Court were to impose a "favorableness" requirement, in this case, the reasonable inference is that the video recordings would have been favorable. Mr. Hollis explicitly and repeatedly asked CEVA to review them not only before CEVA terminated him, but immediately after his termination. That's powerful proof; proof that CEVA has failed to confront, let alone rebut.

---

[2] This factor likely has a proportionality component to it, as well.

The video would have been relevant to whether Mr. Hollis engaged in the conduct for which he was fired, or whether allegations of the conduct were merely pretext for discrimination.

### 4. Was the ESI Lost Because a Party Failed to Take Reasonable Steps?

Some courts place the burden on the party seeking sanctions to show that the opposing party failed to take reasonable steps to preserve ESI that no longer exists. *See, e.g., Sosa v. Carnival Corp.*, No. 18 CV 20957, 2018 U.S. Dist. LEXIS 204933, at *47-48 (S.D. Fla. Dec. 4, 2018). This Court has previously expressed concern that in such cases, the burden has been misplaced. *See DR Distributors*, 513 F. Supp. 3d at 979. As the Court has recounted already in this order, burdens of proof generally fall on the party with better access to information. *Schaffer*, 546 U.S. at 60. In the context of destroyed ESI, generally, the movant would not have access to the information programs or systems or the relevant resources and skills of the party that destroyed the ESI. Moreover, placing the burden on the movant for this requirement just begs for the dreaded discovery-on-discovery quagmire.

Regardless of which party bears the burden, in this case, nothing before the Court even hints that CEVA ever intervened to stop its security system from proceeding as designed and discarding any video recordings after thirty to ninety days. Even after Mr. Hollis' December 5, 2018, letter alerted CEVA to the relevance and potential importance of any footage that had been recorded, CEVA did nothing. During his deposition, in particularly damning testimony that CEVA ignores, CEVA's general manager testified that he could not recall any reason why it would not have looked at the video to determine which version of the events was more accurate. Dkt. 53-2 at 110-11. The Court concludes that CEVA did not take reasonable steps to preserve any security footage after learning about the incident, or even after receiving Mr. Hollis' letter asking that the footage be reviewed. Indeed, CEVA took no steps, let alone reasonable steps, to preserve the video recording. Assuming Mr. Hollis bore the burden on this issue, he met it with evidence of CEVA's complete failure to take any steps to preserve the ESI.

### 5. Was the Lost ESI Unable to be Restored or Replaced?

As with the reasonable steps factor, some courts place the burden on the moving party to show that the lost ESI in incapable of being replaced or restored. *See, e.g., Sosa*, 2018 U.S. Dist. LEXIS 204933, at *47-48. This Court has the same concerns about such an allocation. But again regardless of the burden, nothing before the Court establishes that the video recording can be restored or replaced. CEVA asserts that statements of witnesses can serve as a substitute for the security footage. But obtaining statements from witnesses is *not* what Rule 37(e) meant by "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The question is whether the *electronically stored information* can be restored or replaced. *Id.* And, in any event, the witnesses are not in agreement about what happened between Mr. Hollis and Mr. Bayer. That's the point. In contrast, video of the incident would have definitively established what occurred. *See Schmalz v. Vill. of N. Riverside*, No. 13 CV 8012, 2018 U.S. Dist. LEXIS 216011, at *10-11 (N.D. Ill. Mar. 23, 2018) (under Rule 37(e), testimony about the content of lost text messages is no substitute for the text messages themselves); *see also Dukes v. Freeport Health Network Mem. Hosp.*, No. 19 CV 50189, 2022 U.S. Dist. LEXIS 66453, *2 n.1 (N.D. Ill. Apr.

11, 2022) (video recordings resolve disputed facts). Indeed, video recorded evidence is so powerful that the Supreme Court altered how summary judgment motions are decided when the video evidence contradicts testimony of a party. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007). Accordingly, the Court finds that nothing in the record establishes that the video recordings can be restored or replaced.

### 6. Was There Intent to Deprive/Was There Prejudice?

Having navigated the five-part inquiry and arriving at the conclusion that the record establishes that the video existed, a duty to preserve it existed, the video would have been relevant, CEVA failed to take reasonable steps to preserve it, and the video cannot be restored or replaced, the focus now turns to the questions of intent and prejudice. If there was intent, then under Fed. R. Civ. P. 37(e)(2) the court may impose sanctions such as adverse jury instructions, default, or dismissal. Fed. R. Civ. P. 37(e)(2), advisory committee's notes to 2015 amendments. If intent is established, then prejudice is presumed. *See DR Distributors*, 513 F. Supp. 3d at 980 (citing Fed. R. Civ. P. 37(e)(2), advisory committee's notes to 2015 amendments). On the other hand, to obtain curative measures under Fed. R. Civ. P. 37(e)(1), only prejudice needs to exist. Some courts place the burden to establish intent on the moving party. *See, e.g., Freidig*, 329 F.R.D at 210. But some courts don't. *Laub v. Horbaczewski*, No. 16 CV 24266, 2020 U.S. Dist. LEXIS 258867, *19 (C.D. Cal. Jul. 22, 2020). This conflict is unsurprising. Rule 37(e) gives the court discretion to determine which party bears the burden to establish prejudice. *See Schmalz*, 2018 U.S. Dist. LEXIS 216011, at *9; Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments.

The Court begins with prejudice. Establishing prejudice can be a dicey proposition because the ESI is gone. *See Schmalz*, 2018 U.S. Dist. LEXIS 216011, at *8 ("Establishing prejudice when the ESI has been destroyed and the contents are unknown can be challenging."); *Snider*, 2017 U.S. Dist. LEXIS 107591, at *5 ("Obviously, establishing prejudice is tricky business."). So, courts evaluate prejudice in the context of determining the harm inflicted by the non-existence of relevant information, an undertaking different and more challenging than the general concept of prejudice in different contexts under Rule 37. The process can be challenging in at least two ways: (1) marshalling the evidence to show harm because of the absence of evidence, and (2) determining which party bears the burden of proof to show prejudice. Because of these difficulties, the rule gives the court discretion as to how to best determine prejudice. Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments.

"Prejudice" under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case. *J.S.T., Corp. v. Robert Bosch, LLC*, No. 15 CV 13842, 2019 U.S. Dist. LEXIS 90645, at *19 (E.D. Mich. May 30, 2019), *expert advisor's report and recommendation adopted by* 2019 U.S. Dist. LEXIS 90431, at *3 (E.D. Mich. May 30, 2019). The record in this case establishes prejudice. Some witness testimony will favor the version of events advanced by Mr. Hollis, while other witness testimony will favor the version advanced by CEVA. Definitive proof would have been recorded by CEVA's security cameras aimed at the scene. But despite Mr. Hollis alerting CEVA to the importance of the video recording, CEVA took no steps to view, let alone preserve, the video. As a result, the video is lost and unavailable.

Because Mr. Hollis is left unable to obtain the video of the incident he needed for his case, the loss of ESI has prejudiced him as that term is used under Rule 37(e).

Turning now to intent, obviously, intent is difficult for a moving party to prove and for a court to find. *See SL EC, LLC v. Ashley Energy, LLC*, No. 4:18 CV 1377, 2021 U.S. Dist. LEXIS 179169, *13 (E.D. Mo. Sep. 21, 2021); *Wheeler Bros. v. Jones*, No. 2:14 CV 1258, 2016 U.S. Dist. LEXIS 203181, *17 (M.D. Ala. May 20, 2016) ("intent to deprive" is a difficult question). The evidence used to establish intent is almost always circumstantial, not that there is anything wrong with that. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 CV 10340, 2018 U.S. Dist. LEXIS 57254, *30 (N.D. Ill. Apr. 4, 2018).

In this case, plenty of evidence exists in the record that could lead a reasonable person to conclude that CEVA acted with intent. Specifically, there is evidence that CEVA does not know of anything done in response to Mr. Hollis' request for video, even though just months earlier it pulled and reviewed video of an unrelated incident. As Judge Reinhard noted in his order denying CEVA' motion for summary judgment, CEVA's

> decision not to review the surveillance video is certainly difficult to understand. . . . An inference can be drawn in plaintiff's favor from the investigators' decision not to review, or even look for, video of the Incident—video they knew was likely available. The inference that can be drawn is that the investigators did not want to know what the video might show; that they preferred to make their decision using only the witness statements and interviews and to make their determination of witness credibility based on factors other than what they might have been able to see with their own eyes by viewing the video. *Deciding to ignore the video is not a decision likely to be made by investigators seeking the truth.*

Order [61] at 4-5 (emphasis added). This evidence supports a reasonable inference that CEVA intentionally disregarded Mr. Hollis' request so that the ESI would be lost, no one could view what actually occurred, and Mr. Hollis could not use the video evidence to get his job back or support a likely lawsuit.

In addition, when CEVA responded in 2020 to Mr. Hollis' discovery requests seeking the identity of the custodian of the security video, CEVA stated that the custodian was "Unisight," a third-party vendor in Colorado. But in response to a subpoena, Unisight stated that it merely sold the video equipment to CEVA and had never been the custodian of any video recorded by the equipment. CEVA responds that its discovery response shows only that it was wrong, not that it acted in bad faith. But a reasonable person could conclude that CEVA's response was an attempt to deflect attention away from its own intentional conduct of allowing the automatic deletion of the video. As Magistrate Judge Jeff Cole aptly noted, "False exculpatory statements are often evidence of consciousness of guilt." *See BankDirect Capital Fin., LLC*, 2018 U.S. Dist. LEXIS 57254 at *31.

The Court has recounted evidence that could support a conclusion that CEVA intentionally allowed ESI to be destroyed. And tellingly CEVA has failed to even present the

usual obligatory after-the-fact affidavit so often filed in spoliation cases that it did not intentionally fail to preserve the video recordings.

But a competent counsel who is willing to argue that her client is not inculpatory but is instead incompetent could make a reasonable argument that the failure to pull, preserve, and peruse the video recordings was not intentional. Granted, a jury may not credit this argument, but that should not prevent CEVA from attempting to sell that pitch under these facts. Like District Judge Tom Durkin, the Court is a believer of Hanlon's Razor. *See Raila v. Cook Cty. Officers Electoral Bd.*, No. 19 CV 7580, 2021 U.S. Dist. LEXIS 215458, *1 (N.D. Ill. Nov. 8, 2021) ("An adage known as 'Hanlon's Razor' says, in its most polite form, that we should not infer malice from conduct that can be adequately attributed to incompetence."); *DR Distribs.*, 513 F. Supp. 3d at 951. Humans are just as likely to be dimwitted as they are dastardly.

Because of the difficulty to establish intent, the Court will leave that determination to the jury. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. At this point, the Court will not impose sanctions under Rule 37(e)(2), such as instructing jurors to presume that the missing ESI would have been unfavorable to CEVA. However, based on its findings that all five prerequisites under Rule 37(e) are established, the Court will impose curative measures.

### D. Curative Measure Imposed.

Under Rule 37(e)(1), the Court may impose only those measures that are no greater than necessary to cure the prejudice resulting from the loss of the ESI.[3] A common curative measure is instructing the jury that it can consider the circumstances surrounding the loss of the ESI. Thomas Y. Allman, *Dealing with Prejudice: How Amended Rule 37(e) Has Refocused ESI Spoliation Measures*, 26 RICH. J. L. & TECH. 1, 64-66 (2020) (collecting cases). This Court will provide factual findings to the jury along with an instruction as to how to apply that factual finding under Rule 37(e). The factual findings and instruction are attached to this order as an appendix. The Court has not decided when it will provide the factual findings and instruction to the jury. The three options are (1) during the introductory instructions, (2) at the close of Mr. Hollis' case-in-chief, or (3) at the close of evidence and following arguments, with all the other instructions. The Court will obtain the input of the parties before deciding this issue.

---

[3] Although not a perfect analog, Rule 37(e)(1)'s guidance is reminiscent of Title 18, Section 3553(a)'s command when sentencing a criminal defendant: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

## CONCLUSION

For these reasons, the motion for a missing evidence instruction [65] is granted in part. The jury will be provided with the attached appendix for use in its deliberations.

Date: May 19, 2022        By:  _____
                                       Iain D. Johnston
                                       United States District Judge